## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MARY KATE BREEDEN,     :
             :
   Plaintiff,    :
             :
  v.         : Civil Action No. 08-0625 (JR)
             :
NOVARTIS PHARMACEUTICALS  :
CORPORATION,       :
             :
   Defendant.    :

### MEMORANDUM AND ORDER

   Mary Kate Breeden sues her former employer Novartis Pharmaceuticals Corporation under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.  Novartis moves for summary judgment.  For the reasons set forth below, the motion will be granted in part and denied in part.

### Facts

   Breeden was a salesperson in Novartis' transplant business unit ("TBU").  Her job was to persuade hospital transplant personnel to prescribe Novartis drugs.  Pl. St. Facts 2.  During the fall of 2004, Novartis developed a plan with the assistance of an outside consulting firm to overhaul the structure of the TBU.  Pl. St. Facts 2-3.  As a part of the overhaul, the geographic territories assigned to sales personnel like Breeden  were realigned.  Id.  Around November 2004, Breeden notified her colleagues and supervisors that she was pregnant and that she intended to take leave in the spring of 2005.  Depo. of Mary Kate Breeden 94:7-18, 103:1-104:17, attached to Resp. at Ex.

1.  Breeden's pregnancy was noted on PowerPoint slides used by the consultants for planning the realignment of sales territories.  Pl. St. Facts 29.

Breeden learned around the beginning of 2005 that her sales territory would be changing.  Mot. 9.  While she gained several new accounts with the realignment, she lost three Baltimore-area accounts that she deemed especially valuable.  Pl. St. Facts 3.  The net result for Breeden was a territory in which the number of transplants performed per year was roughly half that of her earlier territory.  Resp. 5; see also Decl. of Mary Kate Breeden ¶¶ 13-14, attached to Resp. at Ex. 2 (describing the decreased number of transplants and diminished interest in Novartis drugs at her new accounts).

When the realignment was announced on a conference call, Breeden objected to the change to her territory.  Pl. St. Facts 14.  Brian O'Callaghan, the general manager of the TBU, said in response, "Well, you're not coming back from maternity leave anyway, right?"  Resp. 4.  After she stated that she did intend to return, Tom Harper, Breeden's supervisor, assured her that she would be made "whole" and that the changes were not permanent.  Id.  Harper also raised Breeden's concerns to his supervisors.  Pl. St. Facts. 15.

Breeden began her FMLA leave in March 2005 and returned to work in July 2005.  Id. at 4.  Soon after her return, she was

- 2 -

informed that the realignment of her territory was in fact
permanent, and that it would not be altered.  Resp. 4.  After the
realignment, however, her rank in sales success among her peers
and resulting incentive-based pay improved considerably compared
to their pre-2005 levels.[1]  Mot. 11.

In early 2008, Novartis did another reorganization of
the TBU.  Id. 13.  It combined Breeden's sales territory with
another territory and decided to retain only one of the two sales
representatives who had been assigned to the former territories.
Id.  Because Breeden's accounts produced fewer prescriptions than
those of her co-worker, Novartis terminated her employment on
January 10, 2008.  Id.

## Analysis

Breeden argues that Novartis interfered with her FMLA
rights ("interference") and retaliated against her for exercising
those rights ("retaliation").

### A. Interference

An eligible employee who takes FMLA leave is entitled,
upon return, to be restored to her former job or "to an
equivalent position with equivalent employment benefits, pay, and
other terms and conditions of employment."  29 U.S.C.

---

[1] The sales rank was calculated by Novartis based on
individual targets it established for each of its salespeople.
Mot. 10-11.  The targets are adjusted for the size and business
potential of the various territories.  Id.

§ 2614(a)(1)(B).  Breeden contends that her realigned sales territory was not equivalent to her former position in terms of effort and skill required, responsibility, authority, and status.[2]  See 29 C.F.R. § 825.215(a) (listing these terms as ways in which positions must be equivalent).

## 1. Effort/Skill/Responsibility

Breeden's arguments regarding effort, skill, and opportunity all center on the fact that the realignment diminished the size and quality of her sales territory.  The premise of this argument appears to be that dealing with a more challenging territory required less effort, skill, and responsibility.  The premise is unconvincing on its face -- more effort and skill should be needed to wring more sales from a smaller territory -- and in any case is supported neither by facts of record nor by caselaw.  Shifting focus in a sales position from maintenance of old accounts to producing new accounts is not sufficient to establish an FMLA violation.  See Yen v. Yang Ming (America) Corp., 2005 WL 6133905, at *7 (C.D. Cal. Nov. 8, 2005).

Breeden's argument finds no support in her assertion that she actually expended less effort on the realigned

---

[2] Novartis suggests Breeden's entitlement claim must fail because she would have been reassigned even if she had not taken leave.  The PowerPoint slides and O'Callaghan's question to Breeden raise triable issues of fact that defeat this argument. At any rate, I hold for Novartis on other grounds.

territories and had to look for side projects to fill her time. Pl. St. Facts. 8; cf. 29 C.F.R. § 825.215(f) (excluding unmeasurable aspects of jobs from required equivalency).  Her attempts to show tangible differences in the effort, skill, and responsibility required by the realigned territory also are no more convincing: She states that she no longer needed to travel great distances for the realigned account, as she had previously, see Breeden Decl. ¶¶ 12-13, but no FMLA violation occurs when an employee previously required to travel regularly is given an office job following leave.  See Smith v. E. Baton Rouge Parish School Bd., 453 F.3d 650, 652 (5th Cir. 2006).  She suggests that the bureaucracies of the Baltimore-area accounts were more difficult to navigate than those of her prior accounts, see Resp. 11-12, but for this proposition she offers only her own ipse dixit, without details.  Breeden has shown only de minimis differences between her new job and her old one.  Her showing is insufficient to support relief.  See 29 C.F.R. § 825.215(f).

## 2. Authority

When Breeden returned from FMLA leave, she no longer had the authority to give discounts to customers, see Resp. 17-18, and she could no longer seek the assistance of a Novartis "customer relationship manager" on certain accounts.  Authority for giving discounts was taken from everyone in Breeden's position after the realignment, however, and she could receive

assistance from a supervising "business account manager," even if she could not turn to a "customer relationship manager."  See Mot. 4-5 (describing post-realignment structure of the TBU); Reply 12-13; Simpson v. Office of Chief Judge of Circuit Court of Will County, 559 F.3d 706, 712 (7th Cir. 2009) ("[A]n employee is not entitled to return to her prior position if she would have been demoted or terminated regardless of whether she took FMLA leave").  Breeden obviously retained the sales tools she needed, given her success in her sales ranking among her peers.  Both changes are de minimis.  See 29 C.F.R. § 825.215(f).

### 3. Status

Finally, Breeden asserts that she had lost status when she returned from leave.  "Status" is not defined by the FMLA or by its regulations, and the term is not developed by caselaw. Breeden specifically asserts that her position was diminished in "prestige" when she lost the Baltimore-area hospitals, Resp. 14, but, whatever "status" means, it is not prestige.  In defining the equivalence required by the FMLA, the Department of Labor specifically excludes any "intangible[] or unmeasurable aspects of the job."  29 C.F.R. § 825.215(f).

### 4. Alleged Admission

Finally, Breeden suggests that the statements that she would be made "whole" constitute an admission that her realigned portfolio was not equivalent to her prior position.  See Resp.

15.  Intent is not an element of an entitlement claim, however, so an employer's subjective views are irrelevant.  See Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1208 (11th Cir. 2001).

### B. Retaliation

To establish a prima facie retaliation claim, Breeden must bring forward evidence that "(1) she engaged in protected behavior, (2) the employer took materially adverse action against her, and (3) a causal relationship existed between the protected activity and the subsequent adverse action." Cole v. Powell, 605 F. Supp. 2d 20, 26 (D.D.C. 2009).  "A plaintiff's burden in establishing a prima facie case is not intended to be an onerous one." Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 315 (6th Cir. 2001).  It is undisputed that Breeden's leave was protected behavior.

Breeden claims that Novartis' failure to make her "whole" was an adverse action.  See Resp. 23-24 ("It was not, however, the initial realignment which serves as the adverse action . . . .  The adverse employment action [also] was not the termination in January 2008, but the refusal by Novartis supervisors to make good on their promises to make her 'whole.'").  She asserts that "[w]hile the affect [sic] of the adverse employment action did not fully manifest itself until 2008, . . . the damage was done in mid-2005, when Breeden returned from her FMLA leave." Id. at 24.

- 7 -

An adverse action in the context of a retaliation claim is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). Burlington was a Title VII decision, but it has widely been accepted as applicable to FMLA retaliation claims. See, e.g., McArdle v. Dell Prods, L.P., 293 F. App'x 331, 337 (5th Cir. 2008). In the Title VII context, courts have explicitly stated that "[t]he concept of adverse action in the retaliation context is broader than in the discrimination context." Franklin v. Potter, 600 F. Supp. 2d 38, 66 (D.D.C. 2009) (internal quotation marks omitted). Similarly, here, adverse action reaches more broadly than the equivalency standard for entitlement claims, which is limited by the categories prescribed by 29 C.F.R. § 825.215(a). After Burlington, the law in most circuits is that the question of what constitutes an adverse action should generally reach the trier of fact. See Crawford v. Carroll, 529 F.3d 961, 973 n.13 (11th Cir. 2008) ("Burlington also strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered materially adverse . . . ."); McArdle, 293 F. App'x at 337 (same).

A jury may find that a reasonable employee could have regarded Novartis's failure to "make [Breeden] whole" to be an adverse action. Breeden has produced evidence that her fellow

salespeople valued the quality of their territories highly.  See
Pl. St. Facts 17-18.  Those employees might reasonably fear that
asserting their rights under the FMLA, as Breeden did, would
result in diminished sales territories, with attendant risks of
reduced opportunities for promotion and increased risk of
termination.  While reasonableness is judged ex ante, Novartis's
eventual decision to terminate Breeden's employment provides some
ex post confirmation of the reasonableness of such fears.

Breeden also has established a prima facie case of
causation.  "The general rule is that close temporal proximity
between an employee's protected activity and an employer's
adverse action is sufficient . . . to create genuine issue of
material fact as to causal connection."  Brungart v. BellSouth
Telecommms., Inc., 231 F.3d 791, 799 (11th Cir. 2000).  The
decision not to make Breeden "whole"[3] occurred very close in time
to her FMLA leave.  The PowerPoint slide mentioning Breeden's
pregnancy and the O'Callaghan comments are relevant to causation.
Breeden's proof is hardly overwhelming, but it is sufficient to
withstand summary judgment.  See Bryson v. Regis Corp., 498 F.3d
561, 571 (6th Cir. 2007) (three-month gap between leave and
adverse action, combined with some additional evidence,
sufficient evidence of causation to survive summary judgment).

---

[3] If, indeed, such a decision was made, and if Breeden,
notwithstanding her increased sales relative to her peers and
increased income, was in fact not made "whole."

Novartis's proffer of a legitimate business purpose for its decision, see Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000), is that the Breeden was reassigned territories as part of a general realignment that affected all salespeople and always was known to be permanent.  In response, Breeden offers both direct and indirect proof of pretext.  She also asserts that O'Callaghan's comments and the PowerPoint slides as proof of a discriminatory motive.[4]  She also argues that Novartis was inconsistent in its reassignments.  Thus, while Novartis states that it reassigned the Baltimore-area hospitals to Roger Samartino based on his existing relationships with those hospitals, see Resp. 26, Breeden points out that it did not reassign the Duke University Medical Center and University of North Carolina accounts to Samartino, despite him having similar existing relationships there, leaving those accounts instead with a childless salesperson.  See id.  Novartis is correct to assert that it is not courts' role to review the business wisdom of individual personnel moves "as super-personnel departments."  Reply 4-5.  Nonetheless, Breeden has brought forward evidence that could establish an inference of discrimination.  Given her limited burden, this is sufficient to survive summary judgment.

---

[4] Motive or intent, while irrelevant to a claim of entitlement, would be admissible to show pretext in the retaliation context.

## Conclusion

Breeden's problem -- which may turn out to be insurmountable -- is proof of damages.  To succeed on any FMLA claim, a plaintiff must show actual damages.  See 29 U.S.C. § 2617(a); Roseboro v. Billington, 606 F. Supp. 2d 104, 108 (D.D.C. 2009).  A claim can succeed only when the "employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief."  Reed v. Buckeye Fire Equip., 241 F. App'x 917, 924 (4th Cir. 2007) (internal quotation marks omitted).  Breeden has yet to articulate any compensable damages under the statute.  Because this issue was not a focus of Novartis's motion, I will not grant summary judgment on the issue.  At trial, Breeden will have to put on sufficient proof of damages recoverable under the statute to withstand a Rule 50 motion at the close of her case-in-chief.

It is **ORDERED** that Novartis's motion for summary judgment [#29] is **GRANTED IN PART**.  Breeden's FMLA entitlement claim is **DISMISSED**.  The motion is **DENIED** in all other respects.


JAMES ROBERTSON
United States District Judge


- 11 -